# 12-3829-CV

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA, *ex rel.,*

*Plaintiff,*

KEVIN GRUPP, ROBERT MOLL,

*Plaintiffs-Appellants,*

– v. –

DHL EXPRESS (USA), INCORPORATED, DHL WORLDWIDE EXPRESS,
INCORPORATED, DHL HOLDINGS (USA), INCORPORATED,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

DANIEL C. OLIVERIO
JOHN L. SINATRA, JR.
REETUPARNA DUTTA
HODGSON RUSS LLP
*Attorneys for Plaintiffs-Appellants*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ...................................................................1

ISSUES PRESENTED FOR REVIEW ..............................................................1

STATEMENT OF THE CASE.............................................................................2

STATEMENT OF FACTS ...................................................................................4

SUMMARY OF ARGUMENT ..........................................................................10

ARGUMENT ......................................................................................................12

A.    Standard of Review ..................................................................................12

B.    DHL's Proffered "Contest" Period Has No Bearing On This
FCA Lawsuit.............................................................................................13

     1.    The Statute Does Not Apply On Its Face...........................................13

     2.    The Board's "Guidance" Should Be Disregarded.............................17

     3.    Case Law Does Not Resolve The Issue. .............................................19

     4.    Three Additional Reasons Compel A Rejection Of
This 180-day Argument. ..................................................................21

          a.    The Wartime Suspension of Limitations Act Applies..............21

          b.    Equitable Tolling Applies.........................................................22

          c.    DHL Received Notice.................................................................23

C.    DHL's Other Arguments For Dismissal Fail As Well. ................................24

     1.    This Action is Timely..........................................................................24

     2.    The Amended Complaint Satisfies Rule 9(b). ....................................27

i

3.    DHL's Contract Defense Fails. ............................................................30

      a.    DHL's Contract Documents Are No Basis for Dismissal. .......31

      b.    This Court Already Rejected The Argument DHL
            Proffers Here. ..........................................................................35

      c.    DHL's Remaining Contract Arguments Also Lack Merit........35

CONCLUSION ....................................................................................................37

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**FEDERAL CASES**

*Allen v. Beta Constr.*,
   309 F. Supp. 2d 42 (D. D.C. 2004) ............................................................27, 28

*Belot v. Burge*,
   490 F.3d 201 (2d Cir. 2007) .......................................................................11

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
   No. 2:08-cv-186, 2010 WL 3397501 (S.D. Ohio, Aug. 25, 2010) ...................19

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council*,
   467 U.S. 837 (1984) ...............................................................................17, 16

*Commercial Contr., Inc. v. United States*,
   154 F.3d 1357 (Fed. Cir. 1998) .........................................................35

*Cruz-Miguel v. Holder*,
   650 F.3d 189,195 (2d Cir. 2011) ................................................13, 16

*EC Term of Years Trust v. United States*,
   550 U.S. 429 (2007) ...............................................................................25

*Federal Deposit Ins. Corp. v. Former Officers*,
   884 F.2d 1304 (9th Cir 1989) .........................................................25

*Francis v. City of New York*,
   235 F.3d 763 (2d Cir. 2000) .........................................................20

*Freeman v. Celebrity Cruises, Inc.*,
   Nos. 94 civ. 5270, 94 civ. 5473, 94 civ. 5546, 1994 WL 689809,
   at *3-4 (S.D.N.Y. Dec. 8, 1994) ........................................................23

*Freeman v. Quicken Loans, Inc.*,
   __ U.S. __, 132 S.Ct. 2034 (2012) ...............................................16

# TABLE OF AUTHORITIES

**Page(s)**

*Frey v. Bekins Van Lines, Inc.*,
  748 F. Supp. 2d 176 (E.D.N.Y. 2010) ...............................................................25

*Gold v. Morrison-Knudsen Co.*,
  68 F.3d 1475 (2d Cir. 1995) ...............................................................................28

*Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*,
  No. 11 Civ. 3130 (DLC), 2012 WL 4049955 (S.D.N.Y. Sept. 14, 2012)..........19

*Gross v. Rell*,
  No. 08-2626-CV, 2012 WL 4353145 (2d Cir. Sept. 25, 2012) .........................11

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995)............................................................................................16

*Gutierrez v. Ada*,
  528 U.S. 250 (2000)............................................................................................15

*In re Apex Express Corp.*,
  190 F.3d 624 (4th Cir. 1999) ..............................................................................18

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*,
  No. 08-CV-761C, 2010 WL 1840316 (W.D.N.Y. May 7, 2010)................34, 35

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*,
  No. 08-CV-761C, 2011 WL 815209 (W.D.N.Y. Mar. 2, 2011) .......................19

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ..........................................................................23

*KVOS v. Associated Press*,
  299 U.S. 269 (1936)............................................................................................18

*Learning Links, Inc. v. United Parcel Serv., Inc.*,
  No. 03 Civ. 7902, 2006 WL 2466252 (S.D.N.Y. Aug. 24, 2006).....................25

*Lewellen v. Morley*,
  875 F.2d 118 (7th Cir. 1989) ..............................................................................24

-iv-

# TABLE OF AUTHORITIES

**Page(s)**

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) ........................................................................13, 14

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986) .......................................................................28

*Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*,
   350 F. Supp. 2d 686 (D. Md. 2004) ................................................19

*Mitchell v. Donchin*,
   286 F.3d 447 (7th Cir. 2002) ...............................................................21

*Mohamad v. Palestinian Auth.*,
   __ U.S. __, 132 S.Ct. 1702 (2012).................................................16

*Omar v. Lindsey*,
   334 F.3d 1246 (11th Cir. 2003) .......................................................22

*REA Express, Inc. v. Civil Aeronautics Bd.*,
   507 F.2d 42 (2d Cir. 1974) .................................................................34

*Ronzani v. Sanofi, S.A.*,
   899 F.2d 195 (2d Cir. 1990) ..............................................................28

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir. 1992) ..............................................................34

*Sierra Club v. Johnson*,
   541 F.3d 1257 (11th Cir. 2008) ......................................................18

*United States ex rel. Butler v. Hughes Helicopters, Inc.*,
   71 F.3d 321 (9th Cir. 1995)................................................................34

*United States ex rel. Costa v. Baker & Taylor, Inc.*,
   No. C-95-1825, 1998 WL 230979 (N.D. Cal. Mar. 20, 1998) ..........24

*United States ex rel. Ellis v. Sheikh*,
   583 F. Supp. 2d 434 (W.D.N.Y. 2008).........................................26, 27

# TABLE OF AUTHORITIES

**Page(s)**

*United States ex rel. Feldman v. Van Gorp*,
  674 F. Supp. 2d 475 (S.D.N.Y. 2009) ..............................................................3, 36

*United States ex rel. Parikh v. Premera Blue Cross*,
  No. CV01-0476, 2007 WL 1031724 (W.D. Wash. Apr. 3, 2007) ....................24

*United States ex rel. Taylor v. Gabelli*,
  345 F. Supp. 2d 313 (S.D.N.Y. 2004) ..............................................................34

*United States v. BNP Paribas SA*,
  No. H–11–3718, 2012 WL 3234233 (S.D. Tex. Aug. 6, 2012) ........................20

*United States v. Graham*,
  691 F.3d 153 (2d Cir. 2012) .............................................................................14

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)....................................................................................17, 18

*Virgilio v. City of New York*,
  407 F.3d 105 (2d Cir. 2005) .......................................................................11, 21

*Williams v. Ercole*,
  __ F.3d __, No. 10-4601-pr, 2012 WL 2548535 (2d Cir. July 3, 2012),
  *petition for cert. filed (U.S. Oct. 1, 2012)*...........................................................11

*Young v. United States*,
  535 U.S. 43 (2002)......................................................................................21, 22

**STATE CASES**

*Avery Dennison Corp. v. Con-Way Transp. Servs., Inc.*,
  No. 2005-L-218, 2006 WL 3350761 (Ohio App. 11th Dist., Nov. 17,
  2006) ..................................................................................................................18

*People v. Bourne*,
  139 A.D.2d 210, 531 N.Y.S.2d 899 (1st Dep't 1988)........................................19

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

*State ex rel. Grupp v. DHL Express (USA), Inc.*,
    907 N.Y.S.2d 772 (Sup. Ct. Erie County 2010), *rev'd on other grounds*,
    922 N.Y.S.2d 888 (4th Dep't 2011), *aff'd on other grounds*, 19 N.Y.3d
    278 (2012) ............................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL STATUTES**

18 U.S.C. § 3287 ................................................................2, 10, 20

18 U.S.C. § 3287(1) .......................................................................21

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

31 U.S.C. § 3729(a)(1)(A) ......................................................2, 3, 5

31 U.S.C. § 3730(b) ..................................................................1, 2, 3, 5

31 U.S.C. § 3730(b)(2) ..................................................................24

31 U.S.C. § 3730(b)(4)(B) ...............................................................3

31 U.S.C. § 3730(c)(3) .....................................................................3

31 U.S.C. § 3730(d)(1) .....................................................................3

31 U.S.C. § 3730(d)(2) .....................................................................3

31 U.S.C. § 3732(a) ..........................................................................1

31 U.S.C. § 3731(b) ........................................................................23

49 U.S.C. § 13710(a)(3) ............................................................10, 13

49 U.S.C. § 13710(a)(3)(B) .........................................................1, 14

49 U.S.C. § 14705 ...........................................................................25

**RULES**

Fed. R. App. P. Rule 32(a) ............................................................36

Fed. R. App. P. 32(a)(5) ................................................................36

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

Fed. R. App. P. 32(a)(6) .............................................................................36

Fed. R. App. P. 32(a)(7)(B) ........................................................................36

Fed. R. App. P. 32(a)(7)(B)(iii) ..................................................................36

Fed. R. Civ. Proc. R. 3 ................................................................................24

Fed. R. Civ. Proc. R. 4(m) ..........................................................................24

Fed. R. Civ. Proc. R. 9(b) ...........................................................25, 26, 27, 28

Fed. R. Civ. Proc. R. 12(b)(6).................................................................1, 11

Fed. R. Civ. Proc. R. 15(c)(1)(B)................................................................24

**OTHER AUTHORITIES**

*National Association of Freight Transportation Consultants, Inc. – Petition for Declaratory Order*, S.T.B. Decision No. 41826, 1997 WL 189658, at *4 (April 9, 1997) (bracketed text in original) ……………………………………17

Restatement (Second) of Contracts § 202(1) ..............................................32

## JURISDICTIONAL STATEMENT

(A)  The District Court has subject matter jurisdiction of this False Claims Act ("FCA") case pursuant to 31 U.S.C. §§ 3730(b) and 3732(a).  *See also* 28 U.S.C. § 1331.

(B)  This Court has jurisdiction under 28 U.S.C. § 1291.  This is an appeal from a final judgment of the District Court that dismissed the amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6).

(C)  The District Court's order of dismissal was entered September 14, 2012.  The resulting judgment was entered September 19, 2012.  The notice of appeal was filed and served on September 21, 2012.

(D)  This appeal is from a final order and judgment that disposed of all claims in the amended complaint.

## ISSUES PRESENTED FOR REVIEW

The District Court dismissed the amended complaint in this FCA case by erroneously holding that the relators and the Government failed to comply with an *inapplicable* 180-day "contest" period located in an unrelated statute — 49 U.S.C. § 13710(a)(3)(B).  But that statute does not apply on its face under customary methods of statutory interpretation.

Even if that 180-day provision was potentially applicable to this FCA case, the Wartime Suspension of Limitations Act (the "WSLA"), at 18 U.S.C. § 3287, suspends its running. Moreover, equitable tolling applies in any event because DHL's false and fraudulent practices were hidden. And DHL was timely informed of its improper overbilling even if the law mandated such notice.

On this appeal, we also expect DHL to raise other issues, not addressed by the District Court, in support of affirmance. For example, DHL may repeat its arguments below that the lawsuit is time-barred, is inadequately pleaded, and is unsustainable on the merits in light of DHL's contractual language. These points similarly are unavailing.

## STATEMENT OF THE CASE

In this FCA case, relators Kevin Grupp and Robert Moll, on behalf of the United States, seek to recover damages for improper *jet fuel* surcharges imposed on Government-shipped packages that DHL transported *solely by ground*.

The FCA facilitates the recovery of damages from those who, like DHL, have defrauded the Federal Government. The FCA, a statute dating to the Civil War era, was enacted to combat overcharges by Government contractors, and it encourages relators to "blow the whistle" on "false or fraudulent" claims by

bringing a *qui tam* lawsuit, like this one, on behalf of the Federal Government. *See* 31 U.S.C. §§ 3729(a)(1)(A), 3730(b).

A company engaged in business with the Government is liable under the FCA if it knowingly presents, or causes to be presented, false or fraudulent claims for payment, or knowingly makes or uses false records or statements to get false claims paid or approved. *Id*. § 3729(a)(1)(A), (B). A "claim" includes a request or demand for money, whether "under a contract or otherwise." *Id*. § 3729(b)(2). The "knowingly" scienter requirement covers any one of these mental states: "actual knowledge," "deliberate ignorance," or "reckless disregard." *Id*. § 3729(b)(1)(A). Liability "require[s] no proof of specific intent to defraud." *Id*. § 3729(b)(1)(B).

Here, DHL knowingly overcharged the Government each time it wrongfully imposed its jet fuel surcharge on shipments that traveled solely by ground. The Government chose not to intervene in this lawsuit,[1] which permitted

---

[1]    It bears noting that the Government's decision not to intervene has no significance to the merits. *See, e.g.*, *United States ex rel. Feldman*, Nos. 10-3297, 11-975, 2012 WL 3832087, at *18 (2d Cir. Sept 5, 2012). The FCA anticipates this, and provides a higher share of recovery to relators who proceed alone, as is their right. The statute also permits the Government to keep abreast of proceedings and *intervene later* for good cause. *See* 31 U.S.C. §§ 3730(b)(4)(B), 3730(c)(3), and 3730(d)(1), (2); *see also A-24 in*

Footnotes continued on next page.

Grupp and Moll to continue this action, while keeping the Government apprised of its progress. A-24.[2] The action, originally filed under seal pursuant to the FCA, was then served on DHL, and DHL moved to dismiss.

DHL claims that its contract permits this practice. But this argument ignores the plain meaning of DHL's own contract documents, and the plain statement of DHL's obligations set out in those documents. It also defies common sense. In its motion to dismiss, DHL also made pleading and timing arguments.

The District Court (John T. Curtin, J.) granted DHL's motion to dismiss on the sole ground that a statutory 180-day contest period applied and had not been complied with. *See* 2012 WL 4060868 (Sept. 14, 2012); A-257-267.

## STATEMENT OF FACTS

DHL is an international package delivery company. A-33 (¶ 20). Relators Kevin Grupp and Robert Moll own a delivery company that operated as a DHL independent contractor. A-31 (¶ 9). Grupp and Moll filed this FCA case against DHL, on behalf of the United States of America, because DHL had falsely

---

Footnotes continued from previous page.

*Appendix.* In fact, many successful FCA cases are litigated this way every year. *See, e.g.*, *Feldman*, 2012 WL 3832087, at *5, *19.

[2]     Citations to "A-__" refer to the Appendix on this appeal.

-4-

and fraudulently charged the Government jet fuel surcharges on Next Day and 2nd Day shipments that DHL transported solely by ground. A-34-37 (¶¶ 24-38). DHL, however, was obligated by its contracts with the Government to charge only a lower *diesel fuel* surcharge for such shipments. *See id.* But DHL knowingly and improperly charged the Government the higher jet fuel surcharges. A-35-39.

DHL does not deny that it charged its jet fuel surcharge on ground shipments. Rather, DHL contends that it was permitted to do so. DHL's own contract documents, however, undermine this position.

In particular, DHL offered several service levels, including "NEXT DAY 10:30 AM," "NEXT DAY 12:00 PM," "NEXT DAY 3:00 PM," "2ND DAY," and "GROUND." A-34-36; A-57-59; A-62. For each service level, DHL charged a different "base" amount (aside from any surcharge imposed). Thus, the Government paid a higher base charge for NEXT DAY 10:30 AM service than it did for NEXT DAY 12:00 PM or NEXT DAY 3:00 PM service, each of which was more expensive than 2ND DAY or GROUND service. A-64; A-66-67; A-69. So when a Government employee chose to have a package be delivered by noon the next day, he or she selected NEXT DAY 12:00 PM as the service level, and the Government paid a greater "base" service charge than it would have for 2ND DAY or GROUND service.

-5-

DHL's contract documents then assessed the Government an *additional* charge — a surcharge based on the added fuel cost used by the applicable mode of transportation. A-34 (¶ 28); A-102-103. In particular, DHL's contract permitted it to impose either a "jet fuel" surcharge for air *shipments*, or a lower "diesel fuel" surcharge for ground *shipments*. A-34 (¶ 26); A-38-39 (¶ 48); A-90 (stating that jet fuel surcharge applies to "Air Express *shipments*") (emphasis added). The fuel surcharge *was added* to the base charge, and DHL billed the total to the Government, which then paid DHL.

But DHL had no contractual or other basis to impose jet fuel surcharges on shipments that never saw an airplane. The jet fuel surcharge was tied directly to the price of *jet fuel*, not some random percentage of the overall charge. A-34 (¶ 28); A-102. Trucks do not use jet fuel.

Instead, what is clear from DHL's contract documents is that DHL was permitted to charge the higher jet fuel surcharge only if a shipment traveled, in at least some portion of its journey, by air. If that shipment traveled solely by truck, DHL's contract documents required DHL to charge the lower diesel fuel surcharge, which, not surprisingly, was tied to the cost of diesel fuel.

Despite these contract terms, DHL routinely and knowingly charged Government agencies, such as the General Services Administration and the

Department of Homeland Security, a "jet fuel" surcharge for shipments that DHL knowingly transported solely by ground, despite the Government already paying a premium for expedited service. A-34 (¶¶ 24-27); A-35 (¶ 32); A-36 (¶ 36). In doing so, DHL submitted, and caused to be submitted, countless false and fraudulent claims.

       Grupp and Moll, who observed DHL's practices and moved DHL shipments for years, allege that DHL knowingly and improperly charged jet fuel surcharges on Government shipments that traveled only by ground, *i.e.*, that DHL imposed the jet fuel surcharge on Government shipments "regardless of whether the delivered items were ever transported by air." A-30-31 ( ¶¶ 2, 9, 10); A-33 (¶ 22); A-34-35 (¶ 29). They allege that DHL's contracts with the Government "limited its jet fuel surcharges to shipments that traveled, at least in part, by air transportation." A-34 (¶ 26).[3] They also allege that DHL stated its fuel surcharge to be an extra charge to adjust for temporary higher fuel costs. A-34 (¶ 28).[4]

---

[3]     DHL's own submissions reflect this term. *See* A-56; A-90; A-102.

[4]     This, too, is supported by DHL's own submissions, although DHL's motion did not include the precise document that Grupp and Moll had alleged in their amended complaint. *See* A-102-103.

Grupp and Moll allege that DHL's improper practices began in 2003 or 2004, when DHL built out its network of regional truck hubs. A-34 (¶ 29); A-35 (¶ 34). In this way, "DHL expanded its ability to transport shorter-distance packages, including Next Day and 2nd Day shipments, solely by ground, without the need for air trips through any DHL air hub." A-35 (¶ 34). They allege that the practice continued until just before DHL left the United States domestic business in January 2009, *i.e.*, "through at least 2008." A-34-35 (¶¶ 29-32).

Based on years of direct experience moving DHL shipments, Grupp and Moll allege that "[a] substantial percentage of DHL Next Day and 2nd Day shipments paid for by the United States Government *did not* travel by air at all, even though they included a jet fuel surcharge. Instead, they were transported via DHL's truck hubs, or otherwise, using ground transportation." A-31( ¶¶ 9, 10); A-35 (¶¶ 32, 33).

Then in paragraph 35 of their amended complaint, Grupp and Moll explain what they saw, with simple *examples* of DHL charging its jet fuel surcharge on shipments traveling solely by ground. A-36. For instance: (1) a Next Day package sent from Buffalo to Cleveland *did not travel by air*; instead, it traveled by truck from Buffalo to DHL's Erie, PA truck hub and, from there, by truck to Cleveland; and (2) a Next Day package sent from Washington, D.C. to

Lorton, VA *did not travel by air*; instead, it traveled by truck from Washington to DHL's Allentown, PA truck hub and, from there, by truck to Virginia. Moreover, based on their knowledge of DHL's billings and pricing, Grupp and Moll provided three discrete *examples* where the Department of Homeland Security improperly incurred the higher jet fuel surcharge. They even cite the numbered waybills. A-36 (¶ 36).

Because only DHL and the Government know the exact number of at-issue shipments, Grupp and Moll allege that, based on their experience, "these DHL practices occurred on vast numbers of occasions from at least 2003 *to 2008*." A-36 (¶ 37) (emphasis added). As a result of DHL's improper jet fuel surcharges, they allege that the Government "paid DHL monies demanded through DHL's presentment of false claims" — claims that knowingly included jet fuel surcharges on shipments that DHL knowingly transported solely by ground. A-38 (¶¶ 44-47). To obtain these payments, DHL falsely and fraudulently represented that the jet fuel surcharge was properly incurred, even though the shipments never left the ground. A-38-39 (¶ 48). Thus, they allege, "[a]s a result of the knowingly false and fraudulent claims submitted by DHL . . . the United States of America paid jet fuel surcharges where no air transportation was used." A-40 (¶ 54).

## SUMMARY OF ARGUMENT

The relators brought this FCA case to recover damages, on behalf of the United States Government, for DHL's improper *jet fuel* surcharges imposed on packages shipped by the Government. DHL knowingly overcharged the Government each time it wrongfully imposed this surcharge.

DHL responds with an irrelevant statute — 49 U.S.C. § 13710(a)(3) — and argues that DHL's false claims cannot be pursued because its invoices were received by the Government more than 180 days before DHL was served with the amended complaint in 2011. DHL's argument fails for numerous reasons. First, the statute does not apply to cases brought in court. Instead, by its clear terms, it applies only to matters brought to the Surface Transportation Board. Second, the Wartime Suspension of Limitations Act, at 18 U.S.C. § 3287, which has been triggered by the nation's wars in Iraq and Afghanistan, suspends the running of the 180-day period. Third, equitable tolling applies in any event because key facts about DHL's practice were hidden. And fourth, DHL was timely informed of its overbilling even if the law mandated such notice.

DHL may raise other issues, not addressed by the District Court, in support of affirmance. For example, DHL erroneously argued below that the

-10-

lawsuit was time-barred, was inadequately pleaded, and was unsustainable in light of DHL's contractual language. These issues are similarly without merit.

DHL's motion should have been denied. This Court should reverse.

# ARGUMENT

A. <u>Standard of Review</u>

   The issues presented by the dismissal based on the 180-day contest period are subject to *de novo* review because they are legal issues arising from a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Virgilio v. City of New York*, 407 F.3d 105, 111 (2d Cir. 2005).  The amended complaint's factual allegations must be taken as true.  *See id.*  And all reasonable inferences must be drawn in favor of the relators.  *See, e.g.*, *Gross v. Rell*, No. 08-2626-CV, 2012 WL 4353145, at *4 (2d Cir. Sept. 25, 2012).

   The District Court's refusal to apply equitable tolling on a Rule 12(b)(6) motion, where there have been no factual findings, is also subject to *de novo* review.  *See, e.g.*, *Williams v. Ercole*, __ F.3d __, No. 10-4601-pr, 2012 WL 2548535 at *1 (2d Cir. July 3, 2012) (if decision not to toll is made as a matter of law, then the standard of review is *de novo*; if based on a factual finding, standard is clear error; if court understood law correctly and based decision on findings of fact supported by evidence, then standard is abuse of discretion), *petition for cert. filed (U.S. Oct. 1, 2012)*; *Belot v. Burge*, 490 F.3d 201, 206-07 (2d Cir. 2007) (same).

B.    DHL's Proffered "Contest" Period Has No Bearing On This FCA Lawsuit.

DHL argues that its false claims cannot be pursued because its invoices were received by the Government more than 180 days before DHL was served with the amended complaint in 2011.  DHL's argument fails for numerous reasons.

1.    The Statute Does Not Apply On Its Face.

As an initial matter, this statutory language is plainly limited to matters *brought before the Surface Transportation Board* (the "Board").  It does not apply to actions *brought in court.*  This "contest" provision is not part of the FCA.  Instead, it is located at the end of a narrow interstate transportation statute, which reads:

> Billing disputes. —
>
> (A) Initiated by motor carriers. — In those cases where a motor carrier (other than a motor carrier providing transportation of household goods or in noncontiguous domestic trade) seeks to collect charges in addition to those billed and collected which are contested by the payor, the carrier may request that the Board determine whether any additional charges over those billed and collected must be paid.  A carrier must issue any bill for charges in addition to those originally billed within 180 days of the receipt of the original bill in order to have the right to collect such charges.

> (B) Initiated by shippers. — If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the Board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

49 U.S.C. § 13710(a)(3).  The question for this Court is whether subsection B's "contest" provision applies outside of proceedings before the Board.  Under a plain reading of the statute, it does not.

To determine the meaning of this provision, the Court must "review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the *placement* and purpose of those words in the statutory scheme." *Cruz-Miguel v. Holder*, 650 F.3d 189,195 (2d Cir. 2011) (emphasis added).  The meaning of a particular statutory section should be "understood in context" by considering how sections "relate to one another."  *Id.* at 195, 200.  Moreover, "identical words used in different parts of the same statute are presumed to have the same meaning."  *Id.* at 196.

As this Court has emphasized, a "statute's 'plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision *within the context* of that statute.'"  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (citation omitted) (emphasis added).

-14-

The court thus "attempt[s] to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Id.* (citation omitted).  Finally, "[s]tatutory construction, as the Supreme Court has said, 'is a holistic endeavor' in which the meaning of a superficially ambiguous provision 'is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'"  *United States v. Graham*, 691 F.3d 153, 160 (2d Cir. 2012) (citation omitted) (omission in original).

Under these fundamental principles, there is only one sensible conclusion:  the "contest" that "must" occur within 180 days is a "contest" in connection with a request made to the Board.  The "contest" requirement, therefore, is not applicable to cases brought in courts.

Specifically, subsection B's two sentences, when read together, provide that a shipper who "seeks to contest the charges originally billed or additional charges subsequently billed," then "may request that the Board determine whether the charges billed must be paid."  Such a shipper "must contest" the "original bill or subsequent bill" within 180 days.  49 U.S.C. § 13710(a)(3)(B).  This "contest" is to be brought to, and decided by, the Board.

In other words, the first sentence identifies a "contest" wherein a shipper challenges charges "originally billed" or "subsequently billed." This contest — in sentence one — is a contest brought *to the Board* for determination. In the second sentence, the statute uses those very same words — "contest," "original bill," and "subsequent bill." Thus, sentence two requires the shipper to "contest" *the* original or subsequent bill within 180 days "in order to have the right to contest such charges." What *contest*? The *contest* brought to the Board, as set forth in sentence one. What *original bill* or *subsequent bill*? The bills identified in sentence one, where Congress established that certain contests be made to the Board — and had nothing to say about litigation in courts. *Sentence two makes no sense without reference to sentence one.* Statutory words — such as "contest," "original bill," and "subsequent bill" — are, after all, "known by their companions." *Gutierrez v. Ada*, 528 U.S. 250, 255 (2000).

*Gutierrrez* is particularly instructive, because there the Supreme Court limited the meaning of statutory words based on nearby words. *Id.* at 252-55. In particular, the statute before the Court contained the phrase "a majority of the votes cast in any election," which the Court read to mean the number of votes specifically cast *for the governor's race*, not the larger number of ballots cast generally. The Court did so because nearby statutory language referred to

gubernatorial elections — logically, the term at issue applied only to votes cast for governor. *Id.* at 254-56.

Similarly here, where this Court must read "contest" in context and in light of its surrounding language. Plainly, a "contest" is a matter brought to the Board, and *this contest* must be brought to the Board within 180 days.

The District Court mistakenly read sentence two in isolation, as if sentence one did not exist. Statutes "should not be read as a series of unrelated and isolated provisions." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995). Moreover, as the Supreme Court recently held in *Mohamad v. Palestinian Auth.*, __ U.S. __, 132 S.Ct. 1702, 1708 (2012), there "is a presumption that a given term is used to mean the same thing throughout a statute" (citation omitted).

Applying these rules, a "contest" is plainly a dispute brought to the Board. When read in light of this settled legal guidance, DHL's proffered statutory bar has no application to FCA cases brought in court.

    2.    <u>The Board's "Guidance" Should Be Disregarded.</u>

DHL has relied on determinations from the Board to the contrary. But a federal agency's interpretation of a statute is irrelevant where the statute is clear. *See Cruz-Miguel*, 650 F.3d at 193 (*Chevron* deference may be considered only if there is a statutory ambiguity that cannot be resolved through "traditional canons

-17-

of statutory construction and a review of legislative history"); *see also Freeman v. Quicken Loans, Inc.*, __ U.S. __, 132 S.Ct. 2034, 2040 (2012) (where statute was unambiguous).

Judicial deference to agency views also is inappropriate when the agency itself does not intend to issue binding decisions. *See United States v. Mead Corp.*, 533 U.S. 218, 233 (2001). In particular, the Board itself limited the import of its view on this statute, and acknowledged its reading was offered only *as guidance*, with no expected bearing on determinations made by courts:

> Initially, we must point out that our purpose in . . . issuing this decision, is merely to provide our opinion regarding the Congressional intent in enacting the 180-day rule. Our role regarding motor carrier regulation under the ICCTA is quite limited. Thus, we intend here only to provide guidance, which we hope will assist parties in resolving billing disputes without unnecessary regulatory intrusion. Because courts, rather than the Board, have the authority to require payment of overcharges [section 14705(b)], it is ultimately up to the courts to apply the 180-day rule in individual cases.

*National Association of Freight Transportation Consultants, Inc. – Petition for Declaratory Order*, S.T.B. Decision No. 41826, 1997 WL 189658, at *4 (April 9, 1997) (bracketed text in original).

Thus, judicial deference to the Board is inappropriate here for four reasons: (a) the statutory provision is clear in the first instance; (b) there are no

-18-

statutory gaps for the Board to fill; (c) the Board itself did not purport to bind any courts; and (d) the Board's "guidance" is manifestly contrary to the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43, 843 n.9 (1984); *Mead*, 533 U.S. at 221, 227-35; *Sierra Club v. Johnson*, 541 F.3d 1257, 1264 (11th Cir. 2008). Thus, the Board's guidance should be ignored here.

3. <u>Case Law Does Not Resolve The Issue.</u>

DHL's cited cases provide no assistance either. First, the *In re Apex Express Corp.* court rejected a bankruptcy court's application of the 180-day limit on factual grounds, finding a triable issue of receipts of bills and simply *assuming* application of the 180-day period. *See In re Apex Express Corp.*, 190 F.3d 624, n.24 (4th Cir. 1999). There is no indication that the *Apex* court *actually considered or decided* whether the 180-day period is limited to actions before the Board. Similarly, the Ohio decision cited by DHL offers a discussion, in *dicta*, of Board decisions. But that court did not *consider or decide* whether the statute applies only to actions before the Board. *See Avery Dennison Corp. v. Con-Way Transp. Servs., Inc.*, No. 2005-L-218, 2006 WL 3350761, at *4-*5 (Ohio App. 11th Dist., Nov. 17, 2006).

These cases are of no utility. Instead, for decisions to have precedential value, issues must be litigated and decided. *See, e.g.*, *KVOS v.*

*Associated Press*, 299 U.S. 269, 279 (1936) ("questions which merely lurk in the record, neither brought to the attention of the Court nor ruled upon, are not to be considered as having been so decided as to constitute precedents") (citations omitted); *People v. Bourne*, 139 A.D.2d 210, 216, 531 N.Y.S.2d 899, 902-03 (1st Dep't 1988) ("a case, therefore, is precedent only as to those questions presented, considered and squarely decided").

District Courts that have addressed the question are in disagreement. In *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 (DLC), 2012 WL 4049955, at *11 (S.D.N.Y. Sept. 14, 2012), the Southern District recently rejected this 180-day contest provision because it was limited to "mere 'billing dispute[s],'" and refused to apply it to a Truth-in-Billing cause of action alleging fraudulent and deceptive practices, noting that this statutory cause of action had its own four-year limitations period. Similarly, *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 350 F. Supp. 2d 686, 693-94 (D. Md. 2004), held that the 180-day period does not apply to a case brought in court. In contrast, a trial court in Ohio sided with DHL, *see Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 WL 3397501, at *6 n.6 (S.D. Ohio, Aug. 25, 2010), as did the same District Judge below (Curtin, J.), in separate DHL litigation, *see Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*, No. 08-CV-761C, 2011

-20-

WL 815209 (W.D.N.Y. Mar. 2, 2011), and 2012 WL 4060971 (W.D.N.Y. Sept. 14, 2012).

While the case law, in sum, is not helpful, the weight of the analysis, and the plain meaning of the statute itself, strongly favor the Government here.

4.    Three Additional Reasons Compel A Rejection Of This 180-day Argument.

DHL's 180-day argument is not a basis for dismissal in any event, for three *additional* reasons — namely, the Wartime Suspension of Limitations Act applies, equitable tolling applies, and DHL received actual notice.

a.    The Wartime Suspension of Limitations Act Applies.

The WSLA — 18 U.S.C. § 3287 — triggered by the nation's wars in Iraq and Afghanistan, *suspends* the running of any statute of limitations[5] until five years after the termination of hostilities.  *See United States v. BNP Paribas SA*, No. H–11–3718, 2012 WL 3234233, at *18-34 (S.D. Tex. Aug. 6, 2012) (applying WSLA to an FCA case; holding that "at war" status commenced in 2001/2002).

---

[5]    If the 180-day contest period is indeed a *precondition* to suit, as claimed by DHL below, then it would be subject to "waiver, estoppel, and equitable tolling" as if it was a statute of limitations.  *See, e.g.*, *Francis v. City of New York*, 235 F.3d 763, 767-68 (2d Cir. 2000).  There is no reason in law or policy to treat DHL's contest period as something outside the scope of the WSLA.

As such, DHL's 180-day period cannot run to the detriment of the United States because this FCA case involves a "fraud or attempted fraud against the United States or any agency thereof."  18 U.S.C. § 3287(1).[6]

      b.    <u>Equitable Tolling Applies.</u>

Equitable tolling also applies because DHL's practices made its false claims not only undisclosed, but also undetectable by the Government. Specifically, DHL never disclosed whether it actually transported shipments by ground or by air.  Certainly, the imposition of a *jet fuel* surcharge implies that the Government's packages spent time in an airplane.  As a result, the Government had no ability to determine if DHL submitted false claims when it charged the higher jet fuel surcharge.  The Government's obligation to be diligent and reasonable in protecting its rights did not obligate it to follow DHL's delivery trucks, or to do anything else on a shipment-by-shipment basis.

Thus, equitable tolling applies to this (and any other) timing or limitations argument.  *See, e.g.*, *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002) (equitable tolling applies to diligent and reasonable plaintiff where vital

---

[6]    Although this argument was not made below, this Court may nevertheless reach it, in its discretion, given the issue's import to the fisc and the fact that the argument is a legal one not requiring any fact-finding.  *See, e.g.*, *Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005).

-22-

information bearing on the existence of a claim remains unavailable and it would

be unreasonable to expect him to sue earlier); *Young v. United States*, 535 U.S. 43,

46-50 (2002) (regarding equitable tolling generally and its applicability to a

statutory "lookback" period).  This doctrine applies to any prescribed period within

which one may enforce rights.  *See Young*, 535 U.S. at 47, 49-50.  It applies here.

At a minimum, the equitable tolling issue should be explored in

discovery, not summarily disposed of on a 12(b)(6) motion to dismiss.  *See, e.g.*,

*Omar v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir. 2003) (affirming denial of motion

to dismiss because discovery was needed on limitations and tolling issues).

        c.      DHL Received Notice.

Even if the 180-day period applies — and if the WSLA and equitable

tolling doctrine do *not* apply — DHL was specifically informed of this very

improper overbilling issue (as to its *non-Governmental* customers, to be sure) in

*2008*, when, on behalf of class members, the undersigned law firm wrote to DHL,

stating that:

> [w]ithout waiving any rights or arguments about the
> applicability and/or effect of this notice, including the
> existence of any requirement therefor, Jim Ball Pontiac-
> Buick-GMC, Inc., *on behalf of itself and all other
> similarly-situated United States customers of DHL*,
> hereby notifies DHL that they have been and are being
> improperly charged by DHL for jet fuel surcharges on

-23-

> next day and second day deliveries that are transported
> by DHL solely by *ground* transportation.

A-194 (emphasis added). Because such a notice is effective on a class-wide basis,[7]

it should be effective here as well, given that DHL was aware that its *uniform* jet

fuel surcharge practice was being challenged in federal court.[8]

C.    DHL's Other Arguments For Dismissal Fail As Well.

        DHL may press other arguments from its motion to dismiss in support

of affirmance by this Court. Those arguments also lack merit.

    1.    This Action is Timely.

        This action is timely in all respects. The FCA contains its own *six-*

*year* statute of limitations, with a built-in discovery rule providing three years from

---

[7]    Such a notice is effective as to all putative class members. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336-37 (11th Cir. 1984) (reversing decertification where only a small number of passengers gave the requisite notice of claim, and lawsuit was commenced within that period; rejecting defendant's argument that the lawsuit did not act as notice of claim as to other putative class members); *Freeman v. Celebrity Cruises, Inc.*, Nos. 94 civ. 5270, 94 civ. 5473, 94 civ. 5546, 1994 WL 689809, at *3-4 (S.D.N.Y. Dec. 8, 1994) (ruling that the class *includes* passengers who had *not* filed a notice of claim within six months of injury because named plaintiffs provided a notice of claim "on behalf of themselves and on behalf of all members of any class that might be certified").

[8]    It bears noting that the amended complaint alleges that DHL submitted false claims *in all of 2008* (A-35 (¶¶ 30, 32); A-36 (¶ 37)), a fact the District Court overlooked on page 9 of its decision (A-265).

-24-

discovery of the fraud. *See* 31 U.S.C. § 3731(b). This action, which addresses DHL's false claims starting in 2003 or 2004 and running through 2008, was commenced well within the FCA's limitations period. Specifically, the action was commenced in April 2008. A-1; A-7. It is *commencement*, not service of the complaint, that satisfies the statute of limitations. *See, e.g.*, *Lewellen v. Morley*, 875 F.2d 118, 121 (7th Cir. 1989); *United States ex rel. Parikh v. Premera Blue Cross*, No. CV01-0476, 2007 WL 1031724, at *3-4 (W.D. Wash. Apr. 3, 2007) (in FCA context); *United States ex rel. Costa v. Baker & Taylor, Inc.*, No. C-95-1825, 1998 WL 230979, at *3 (N.D. Cal. Mar. 20, 1998) (same); *see also* Fed. R. Civ. Proc. 3, 4(m).

This case was filed in 2008 *under seal*, as required by the FCA. *See* 31 U.S.C. § 3730(b)(2). It was kept under seal, pursuant to the FCA, until the Court unsealed it and allowed Grupp and Moll to serve DHL last year.[9] A-3-4; A-21-44. Under the FCA's express provisions, any earlier notice to (or service upon) DHL was forbidden. *Any provision of time*, therefore, must be read in light of the FCA's seal requirements and six-year limitations period. All false claims made

---

[9] There is no question that the 2011 amended complaint (A-29), which is substantially the same as the original complaint (A-7), relates back to the original complaint under Federal Rule of Civil Procedure 15(c)(1)(B). *See, e.g.*, *Costa*, 1998 WL 230979, at *3 (in FCA context).

during the six years before the 2008 filing are, therefore, timely.  *See Parikh*, 2007 WL 1031724, at *3-4; *Costa*, 1998 WL 230979, at *3.

Because the FCA has its own specific six-year statute of limitations applicable to this FCA action, DHL's suggested three-year period is irrelevant. *See generally EC Term of Years Trust v. United States*, 550 U.S. 429, 432 (2007) (general statute is trumped by more specific, tailored statute).  This is a statutory FCA action.  It is not an action brought under 49 U.S.C. § 14705, which is a statute to recover a rate overcharge.  *See Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 181-82 (E.D.N.Y. 2010) (distinguishing rate overcharge claims from fraud and deceptive practice claims, and rejecting limitations period for overcharge claims); *Learning Links, Inc. v. United Parcel Serv., Inc.*, No. 03 Civ 7902, 2006 WL 2466252, at *2 (S.D.N.Y. Aug. 24, 2006) (distinguishing rate overcharge claim from claim for a volume discount for limitations purposes).[10]  The FCA's six-year period applies.[11]

---

[10]    When there is doubt about which of two competing periods to use, courts nevertheless apply the *longer* period.  *See, e.g.*, *Federal Deposit Ins. Corp. v. Former Officers*, 884 F.2d 1304, 1307 (9th Cir 1989).

[11]    Even if DHL's suggested three-year period applies, charges from 2005 to 2008 would still be at issue.  Moreover, claims based on older charges would be subject to equitable tolling, as explained above.

2.    <u>The Amended Complaint Satisfies Rule 9(b).</u>

The amended complaint, detailed above, satisfies Rule 9(b)'s particularity requirements.  DHL knows full well what this case is about, and its own submissions prove it.  DHL included evidence and briefs from other cases addressing this very issue.  A-52; A-111; A-168; A-188.  The letter and spirit of Rule 9(b) are met because Grupp and Moll have stated "with particularity the circumstances constituting fraud," and "[m]alice, intent, [and] knowledge . . . may be alleged generally."  *See* Fed. R. Civ. Proc. 9(b).  DHL has all the information it needs to answer these allegations, to investigate the matter, and to mount its defense.  Can DHL really argue that it is unaware of its own contracts, or how it applied its fuel surcharges?  DHL's Rule 9(b) argument should be rejected.

This case is similar to *United States ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 436-37 (W.D.N.Y. 2008).  In that FCA case, the District Court rejected the defendant's Rule 9(b) particularity argument where the relator alleged that, *for at least two years*, the defendant defrauded Medicare and Medicaid by scheduling three or four patients during each 15-minute slot on his schedule, yet billing the Government for codes reflecting 15- or 25-minute appointments for each.  The relator pleaded a single example on just one specific date. *Id*. at 437, 438-39.  After acknowledging that "[u]nrealistic barriers to such [FCA] actions

-27-

should not be erected, for to do so would defeat the purpose of the Act," the Court held that the pleading was sufficient because the defendants were *undoubtedly on notice* as to the nature of the claims about inaccurate billing and code usage. *Id*. at 438. The *Ellis* Court noted that the relator was not "seeking, through discovery, to determine whether fraudulent actions have taken place." *Id*. Instead, like here, the relator described "specific incidents allegedly illustrative of defendants' pattern of fraudulent activity." *Id*.

The *Ellis* Court also held that 9(b) standards are relaxed "when the necessary evidence of the essential elements of the claim is within the exclusive control of the defendant." *Id*. That is the case here — DHL knows the details of its shipments for the Government, and how DHL transported them. The Court continued, "[c]ourts have also relaxed the specificity requirement of Rule 9(b) when the fraud being alleged is part of a complex scheme occurring over a long period of time," involving "numerous occurrences." *Id*. at 439 (internal citations omitted). That describes the allegations here.

Like *Ellis*, Grupp and Moll allege "a[ ] daily pattern of fraudulent billing which occurred over a [several]-year period." *Id*. If DHL needs more information to understand the lawsuit, it is squarely within DHL's possession. *Id*. The allegations here are certainly as specific as those in *Ellis*.

-28-

Also instructive is *Allen v. Beta Constr.*, 309 F. Supp. 2d 42, 46-47 (D. D.C. 2004). In that FCA case, the defendants argued that the complaint failed to identify the particular defendant, complained that all defendants were *referred to collectively*, and contended that the complaint lacked particularity as to time, place, content, and identity. *Id.* The court disagreed, ruling that a complaint alleging a multi-year scheme requires fewer details, that the allegations put the defendants on notice, and that a relator must be allowed to fill in gaps during discovery where those details are in the defendants' possession. *See id.*

DHL cites cases addressing discrete frauds and discrete misrepresentations, but those decisions do not govern this case. Here, DHL's *entire set* of Government claims is at issue, and DHL knows precisely the individual actors (all of whom DHL is responsible for), the contract language, the relevant corporate policies, the fraud alleged, the shipment and billing details, and the numbers at issue. *See Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995) (Rule 9(b) requires, in an FCA case, "specific statements *or conduct*

-29-

giving rise to the fraud claim") (emphasis added). Sufficient DHL *conduct* is alleged in this case.[12] DHL's Rule 9(b) specificity arguments fail.

        3.     <u>DHL's Contract Defense Fails.</u>

        DHL believes that it was permitted by its contracts to impose *jet fuel surcharges* for shipments that never traveled by air. DHL also seems to believe that its contract was so ambiguous that it could charge whatever it liked. DHL is wrong, and its contract arguments cannot succeed on this motion to dismiss.

        DHL argued for dismissal by presenting an unworkable interpretation of its contract. DHL's argument that words in the agreement either have no meaning, or a meaning directly at odds with common usage, is doomed whether on a motion to dismiss, or at summary judgment, or at trial. DHL apparently expects the courts to adopt unreasonable inferences in its favor, based on documents, or more precisely portions of documents, that it designates. This defense fails.

---

[12]     In the event greater particularity is needed, Grupp and Moll requested leave to amend to add whatever additional detail is known to the relators, including that learned in discovery in related litigation — detail known as well to DHL. *See Ronzani v. Sanofi, S.A.*, 899 F.2d 195, 198-99 (2d Cir. 1990). Under these facts, justice would require no less. *See, e.g.*, *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986) (Rule 9(b) dismissals are typically accompanied by leave to amend).

a.     DHL's Contract Documents Are No Basis for Dismissal.

DHL's jet fuel surcharge is contractually limited to "Air Express" shipments.  Despite this, DHL posits that this Air Express term has nothing to do with *air travel*, and is instead *a category of DHL services* to which DHL can apply a *jet fuel* surcharge no matter how a package is transported.  In other words, DHL contends that "Air Express" *equals* "Next Day" and "2nd Day" service, whether by ground or by air.

DHL is wrong.  Initially, DHL's *Air Express Services* interpretation has no support in the documents.  That category *simply does not appear* in any DHL document.[13]

Instead, DHL's contract documents do not permit DHL to charge a jet fuel surcharge in these circumstances.  DHL's contract permitted Government employees to select one of several separate and distinct levels of DHL services, namely:  "Next Day," "Second Day," or "Ground."  DHL's documents then say

---

[13]     In addition, DHL's effort below to define Air Express as including "Same Day" shipments must fail because, in one breath, DHL included "Same Day" in its litany of would-be Air Express "services," but later admitted its inconsistency when it acknowledged that it did not impose the jet fuel surcharge on Same Day shipments.  Simply put, if Same Day was a subset of Air Express, then Same Day would also include a jet fuel surcharge.  It does not.  *In sum, there is simply no defined set of "Air Express" services in DHL's documents.*  A-47-191.

that the "Jet Fuel Surcharge" applies to "Air Express" shipments. *"Air Express"
was not a defined category of service available to the Government*. Because it was
not a defined term, the words "Air Express" should be given their plain meaning:
Air Express is a *method of transport* — by "air." Thus, DHL's contract documents
permitted it to impose a "jet fuel" surcharge for shipments transported in whole or
in part by air. Those documents likewise permitted DHL to impose a "diesel fuel"
surcharge for shipments transported by ground.

    Moreover, DHL's Standard Rate Guide states that "*Air Express
shipments are assessed a fuel surcharge which is indexed to the USGC kerosene-
type jet fuel index*," while "[g]round shipments are assessed a fuel surcharge which
is indexed to the U.S. Dept. of Energy's on-highway diesel fuel index" (emphasis
added). A-90. This Rate Guide is consistent with DHL's indexed fuel surcharge
document, where the "Air Express" surcharge table is entitled "2008 *Jet Fuel
Surcharge* Table." A-102 (emphasis added). The words used have plain meaning:
a "*Jet Fuel* Surcharge" applies to *jet fuel*. A diesel fuel surcharge applies to
shipments that traveled by truck — trucks that use diesel fuel. Each surcharge is
tied to the method of transport. There is no other rational interpretation.

    Thus, DHL reserved for itself the right to impose two different fuel
surcharges — one for jet fuel and the other for diesel fuel. Each surcharge was tied

-32-

to its own publically-available index: jet fuel prices on one hand, and diesel fuel prices on the other. Each surcharge changed monthly — the jet fuel surcharge rose and fell with changes in the price of jet fuel, and diesel fuel surcharges with changes in the price of diesel fuel. Each surcharge, in name, application, and calculation, was tied to the specific type of fuel, which was dependent on the method of transport.

In fact, in Exhibit D to DHL's moving papers (A-102), DHL explains that "[t]hese surcharges" — plural — "are applicable to *all* DHL products, except for the following services: DHL Same Day, DHL Global Forwarding, DHL Global Mail and DHL Solutions" (emphasis added). Thus, *both* surcharges — jet fuel and diesel fuel — were potentially applicable to *all* Next Day and 2nd day shipments. The trigger for each surcharge is the mode of transport (hence, the type of fuel) used.

DHL's claim of a single, higher, fuel surcharge tied to all Next Day and 2nd Day shipments is directly refuted by its own documents, and by common sense. If DHL's argument is credited, then it misled the Government by calling each a "fuel" surcharge, when it was in fact a "service surcharge." Of course, DHL *already* charged more for faster service. Its fuel surcharge, then, was unrelated to service levels. Instead, it was tied to the type of fuel used.

-33-

DHL *could have* reserved to itself the ability to impose a surcharge that did not specify a type of fuel or the method of transport. It did not. Having promised that it would impose a surcharge based on "air" or "ground," it cannot now change its contractual commitment.

Moreover, DHL's stated purpose for calculating its Air Express shipment surcharge using the price of jet fuel — to enable it to track quickly changes in fuel prices (A-102) — also undermines its argument. *See* Restatement (Second) of Contracts § 202(1) (the "principal purpose" of the parties is given "great weight" when interpreting a contract). It makes sense that rapidly changing jet fuel prices are reflected in the surcharges that DHL applies to shipments that travel by (jet) airplane. But changes in jet fuel prices have no impact on shipments traveling by truck. Changes in diesel fuel prices do.

Here, the ordinary meaning of words, and the entirety of DHL's contract documents, mandate one result: *Air* Express means shipment by *airplane*. According to DHL's contract documents, if a shipment travels by airplane, the jet fuel surcharge applies. Otherwise, it does not. That DHL reserved its right to *transport* shipments how it chose does not translate into a right to apply surcharges fraudulently.

-34-

Certainly, the amended complaint states a *prima facie* case that DHL's practices are false and fraudulent, because DHL knowingly charged jet fuel surcharges on Next Day and 2nd Day shipments that it knew traveled solely by ground. The amended complaint sufficiently alleges that DHL has violated the FCA and knowingly overcharged the Government.

      b.    <u>This Court Already Rejected The Argument DHL Proffers Here.</u>

This Court's prior interpretation of the term "Air Express" also refutes DHL's argument. In fact, this Court has considered the meaning of the term "Air Express" once before — when a delivery company like DHL claimed its competitors were using the term "Air Express" unfairly. The Court determined that the term "Air Express . . . means simply the speedy delivery of goods by air and not any company's particularized kind of service." *REA Express, Inc. v. Civil Aeronautics Bd.*, 507 F.2d 42, 46 (2d Cir. 1974). The same is true here.

      c.    <u>DHL's Remaining Contract Arguments Also Lack Merit.</u>

DHL also tries to create confusion out of its contract. But DHL cannot create an ambiguity by "implication," or by proffering a meaning different from that alleged in the complaint. *See, e.g.*, *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (contract "is not made ambiguous simply because the parties urge different interpretations"). This is not a case of "innocent

mistake" or "mere negligence." *See United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 330 (S.D.N.Y. 2004). Nor is it a case of innocent breach or misinterpretation of a contract. *See United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 329 (9th Cir. 1995). Rather, the amended complaint alleges DHL's knowing submission of false claims.

DHL has relied on Judge Curtin's ruling in the consumer class action where he denied *both parties'* cross-motions for partial summary judgment on liability. *See Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*, No. 08-CV-761C, 2010 WL 1840316, at *3-4 (W.D.N.Y. May 7, 2010). Although Judge Curtin stated that "the term Air Express is ambiguous," he also made a noteworthy observation that, "[a] review of the contract and related documents indicates that DHL does not use 'Air Express' as a category of shipping services in its Rate Guide." *Id.* at *3. Next, Judge Curtin's decision further refutes DHL's view by stating that:

> DHL does not advise its customers that "Air Express" is a category of shipping that includes Same Day, Next Day, and Second Day options or that a jet fuel surcharge will be assessed to all Same Day, Next Day, and Second Day shipments, even when they are shipped by ground transportation. The waybill used for Next Day or Second Day shipments does not indicate that those services are "Air Express" services. It is reasonable for a customer to believe that a Next Day shipment to a location within an

> hour's drive would not require transport by jet and would
> not be assessed a jet fuel surcharge.

*Id.*

Moreover, in prior New York State FCA litigation, the trial court had rejected the very same contract argument DHL proffers in this case, stating that "DHL's construction of the Contract, at least at this pre-discovery juncture, cannot be accepted because it would lead to an *absurd or at least unsound* result" (emphasis added). *See State ex rel. Grupp v. DHL Express (USA), Inc.*, 907 N.Y.S.2d 772, 782 (Sup. Ct. Erie County 2010), *rev'd on other grounds*, 922 N.Y.S.2d 888 (4th Dep't 2011), *aff'd on other grounds*, 19 N.Y.3d 278 (2012).

DHL's proffered interpretation, "so plainly lacking in merit," cannot support a dismissal. *See Commercial Contr., Inc. v. United States*, 154 F.3d 1357, 1366 (Fed. Cir. 1998). Moreover, dispositive motions based on a lack of scienter are disfavored where interpretation issues are involved. *See, e.g.*, *United States ex rel. Feldman v. Van Gorp*, 674 F. Supp. 2d 475, 481 (S.D.N.Y. 2009) (denying motion for summary judgment). For these reasons, DHL's contract arguments cannot support dismissal.

## CONCLUSION

On DHL's motion to dismiss, all presumptions must favor the relators, and all doubts are to be resolved in their favor. DHL's motion should have been

denied, so that this case may proceed to the merits — to enable the Government to

recover for DHL's improper jet fuel surcharges.  Thus, this Court should reverse

the District Court's order and judgment below.

Dated:          November 7, 2012

                                        Respectfully Submitted,
                                        **HODGSON RUSS LLP**
                                        By: /s/ John L. Sinatra, Jr.
                                        Daniel C. Oliverio, Esq.
                                        John L. Sinatra, Jr., Esq. and
                                        Reetuparna Dutta, Esq.
                                        140 Pearl Street, Suite 100
                                        Buffalo, New York   14202-4040
                                        Telephone:  (716) 856-4000
                                        *Attorneys for Plaintiffs-Appellants*
                                        *Kevin Grupp and Robert Moll*

Certificate of Compliance With Rule 32(a) — Compliance with
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

- √      this brief contains 8,385 words, excluding the parts of the
  brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*
- *N.A.*   this brief uses a monospaced typeface and contains
  [*number of*] lines of text, excluding the parts of the brief
  exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

- √      this brief has been prepared in a proportionally spaced
  typeface using Microsoft Word 2010 (v.14.0.6123.5001) in 14-
  point Times New Roman font, *or*
- *N.A.*   this brief has been prepared in a monospaced typeface
  using [*name and version of word processing program*] with
  [*number of characters per inch and name of type style*].

Dated:      November 7, 2012

Respectfully Submitted,
**HODGSON RUSS LLP**

By: /s/ John L. Sinatra, Jr.
Daniel C. Oliverio, Esq.
John L. Sinatra, Jr., Esq. and
Reetuparna Dutta, Esq.
140 Pearl Street, Suite 100
Buffalo, New York   14202-4040
Telephone:  (716) 856-4000
*Attorneys for Plaintiffs-Appellants*
*Kevin Grupp and Robert Moll*